IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HIGBY CRANE SERVICE, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 10-1334-JAR |
| NATIONAL HELIUM, LLC., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

This litigation arose as a result of a fire in the National Helium Plant near Liberal, Kansas on August 19-20, 2008, causing damage to one of Plaintiff Higby Crane, LLC's ("Higby") cranes. Plaintiff National Insurance Company ("National") is an insurance company licensed to issue general liability insurance policies in Kansas. National brought this action against Defendants National Helium, LLC. ("National Helium"), which owned the plant, and Duke Energy Field Service, LP ("Duke Energy"), which operated the facility, claiming a right of subrogation through its insured, Higby. Plaintiffs seek $253,848.10, the amount of loss from the crane's destruction.

On April 4, 2012, Defendants filed a motion for summary judgment (Doc. 39), arguing primarily that a contract governing the relationship between the parties contains a subrogation waiver by Higby that prevents National from subrogating this claim. On April 30, Plaintiffs filed a cross motion for summary judgment (Doc. 42), arguing that the contract does not address the claim in this case. Both motions are currently before the Court and are fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants Plaintiffs' cross

motion for summary judgment and denies Defendants' motion for summary judgment.

## I.    Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

---

[1]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]  "Where, as here, the parties file cross-motions for summary judgment, [the Court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain

---

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

as to material facts."[14]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[16]

## II.      Uncontroverted Facts

Many of the relevant facts in this case are not controverted for purposes of summary judgment.  At all material times, Defendant Duke Energy, renamed DCP Midstream, LP ("DCP"),[17] has operated, and its wholly owned subsidiary, National Helium, has owned the National Helium Plant, a gas processing plant near Liberal, Kansas.  National Helium is an affiliate of DCP.

On or about November 1, 2001, DCP and Higby entered into a Master Service Agreement ("MSA") that established general terms and conditions which apply to every oral or written contract between the parties.  DCP is identified as "Company" in the MSA and Higby is identified as "Contractor."

---

[14]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[15]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[17]Defendants filed an affidavit attesting that "[a]s of November 1, 2001, DCP, which was then named Duke Energy Field Services, LP, and Higby Crane entered into the attached Master Service Agreement, Contract No. MSA-MC01079."  Doc. 16 at 1; *see also* Doc. 43-1 at 3 (Certificate of Name Change).  Plaintiffs have not put this fact in controversy.  For clarity, the remainder of this order will use DCP.

MSA ¶ 9.1 required Higby to purchase four kinds of insurance: (1) Worker's Compensation Insurance, (2) Employer's Liability Insurance, (3) Commercial General Liability Insurance, and (4) Business Automobile Liability Insurance.  Under MSA ¶ 9.3, Higby was required to procure policies for these four types of insurance in which the insurer assigns and relinquishes to DCP all rights of recovery, lien, and subrogation which an insurer might otherwise have against DCP.  The parties disagree as to whether, under the MSA, Higby was to require that the insurer waive these rights for any insurance that Higby might acquire, outside of the four types enumerated in the MSA.

Higby obtained a Commercial Inland Marine policy from National, covering risks of direct physical loss from an external cause to covered property.  There is no duty under MSA ¶ 9.3 or elsewhere in the MSA for Higby to procure a Commercial Inland Marine policy, although Defendants allege that it is included among those policies for which Higby was to require that the insurer waive recovery, lien, and subrogation rights under the MSA.  The CIM policy includes a subrogation clause that states if in the event of a loss, Higby "shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, [Higby] will, if requested by [National], assign and transfer such right of action to [National] to the extent of payment made by [National]."[18]

On or about August 19 to August 20, 2008, Defendants, in the course of operating the National Helium Plant, negligently released or vented various gases in such a manner that a vapor cloud formed and ignited.  As a result of the fire, the crane owned by Higby and insured by National was damaged to the extent it was inoperable and required repair at a cost of

---

[18]See Doc. 40-3 at 6.

$253,848.10.

## III.    Discussion

Based on the uncontroverted facts, these cross motions for summary judgment present the question of whether Plaintiffs' claim to recover damages for property loss as a result of the negligence of Defendants' employees is barred as a matter of law by the language in the MSA, as Defendants argue, or whether the MSA has no application to Plaintiffs' claims as a matter of law, as Plaintiffs argue.  Although this central question turns on the language in the MSA, the parties raise two other arguments.  First, Plaintiffs argue that, if the MSA does indeed bar National's subrogation of this claim, Colorado law forbids such an agreement and that portion of the MSA is void.  Second, Defendants argue that, if the CIM policy is not one of the kinds of policies identified in the MSA, and Higby has not otherwise purchased the required insurance, Higby has breached the contract and should not be able to recover for its loss.

In this case, the parties agree that Colorado substantive law applies, based on a choice of law provision in the contract at issue.  "Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules."[19]  "Under Kansas law, the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue."[20]  Here, a reasonable relation exists because both Duke Energy's and National Helium's company headquarters are in Colorado.

### A.  Applicability of the MSA Subrogation Requirements.

---

[19]*Altrutech, Inc. v. Hooper Holmes, Inc.,* 6 F. Supp. 2d 1269, 1273 (D. Kan.1998).

[20]*Id.* (citation omitted)

The relevant MSA provisions state as follows:

8.5 <u>Third Party and Property Damage Claims and Liabilities.</u>  As to claims and liabilities not specifically provided for in this Agreement, the Parties shall rely on such rights and remedies as they may have at law or in equity and on the insurance to be provided under Paragraph 9 below.

. . . .

9. <u>INSURANCE</u>

9.1 <u>Required Coverages.</u>  Throughout the term of this Agreement Contractor shall carry and pay for the following insurance:

. . . .

(c) Commercial General Liability Insurance covering liabilities for death and personal injury and liabilities for loss of or damage to property with combined single limit of not less than $3,000,000 per occurrence. This insurance must cover all operations of Contractor required to fulfill this Agreement.

. . . .

9.2 <u>Additional Assureds.</u>  The insurance policies described above shall include Company, its affiliates and coventurers, and their directors, officers, and employees as additional assureds. All insurance required hereunder and provided by Contractor shall be primary coverage.

9.3 <u>Waiver of Subrogation.</u>  The insurance policies described above shall, in addition be so written or endorsed to provide that the insurer shall assign and relinquish unto Company (i) any right of recovery which the insurer may have or acquire against Company, its affiliates or coventurers, or their directors, officers, or employees for payments made or to be made under such policies, and (ii) any lien or right of subrogation which the insurer may have or acquire for payments made or to be made to any person who asserts a claim against Company, its affiliates or coventurers or their directors, officers, or employees. The assignment shall be written and is intended to permit Company to obtain an offset or credit against any claim filed or prosecuted against Company, its affiliates or coventurers, or any of their officers, directors, or employees by any person or entity to or for whom the insurer pays monies or other benefits. Nothing herein shall limit or affect Company's rights and coverage as an additional

7

assured under such insurance policies.[21]

Defendants argue that MSA ¶ 9.1 required Higby to procure insurance that covered "liabilities for loss of or damage to property" and "all operations of Contractor required to fulfill this Agreement," and that the CIM policy met these requirements.  Defendants then argue that the CIM policy was, under MSA ¶ 9.3, one of the "insurance policies described above," such that National cannot subrogate Higby's claim in order to seek payment for National's payment for the crane under the CIM policy.  This argument fails.

Under Colorado law, the interpretation of a contract is a matter of law.[22]  Colorado courts must construe the terms of the agreement in a manner that allows each party to receive the benefit of the bargain, and the scope of the agreement must faithfully reflect the reasonable expectations of the parties.[23]  Colorado courts ascertain the parties' intent by looking to the plain language of the agreement and enforce the agreement as written unless there is an ambiguity in the language; courts should neither rewrite the agreement nor limit its effect by a strained construction.[24]  Where, as here, a party argues that the contract acts as an agreement to indemnify another for the indemnitee's own negligence, such a construction is only permitted if "it contains a clear and unequivocal expression that the parties intended that result."[25]

For purposes of this suit, the MSA required only Commercial General Liability

---

[21]Doc. 40-1 at 4–5.

[22]*Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) (internal citations omitted).

[23]*Id.*

[24]*Id.*

[25]*Constable v. Northglenn, LLC*, 248 P.3d 714, 716 (Colo. 2011).

8

Insurance.  Under Colorado law, liability insurance "protects the insured against claims brought by third parties who have been injured by the insured's conduct."[26]  *Black's Law Dictionary* defines liability insurance as "[a]n agreement to cover a loss resulting from the insured's liability to a third party."  Under the unambiguous plain language of the contract, Higby was required to purchase only commercial general liability insurance that would cover Higby and Defendants. On its face, the CIM policy is not commercial general liability insurance, and a review of its coverage verifies that it covers only property owned, leased, rented, or in the care, custody, and control of the insured.[27]  The CIM policy is not commercial general liability insurance and so is not an insurance policy required by the MSA.  Because the CIM policy was not required by the MSA, it was not one of the "insurance policies described above," under MSA ¶ 9.3, and so the subrogation requirements do not apply to the CIM policy.  As a matter of law, the subrogation requirements in the MSA do not bar Plaintiffs' claim to recover damages for property loss as a result of the negligence of Defendants' employees because the CIM policy is not addressed by the MSA.

Defendants also argue that MSA ¶ 9.2 required Higby to name DCP and National Helium as additional assureds, such that they would be covered by the CIM policy and would not be subject to a subrogation claims resulting from payment on that policy.  This argument is correct in that ¶ 9.2 required Higby to add DCP and National Helium as additional assureds on policies required by the MSA.  For example, Higby was required to add them on its commercial general

---

[26]*Abady v. Certain Underwriters at Lloyd's London Subscribing to Mortgage Bankers Bond No. MBB-06-0009*, No. 2012 WL 4829601, at *5 (Colo. App. Oct 11, 2012);  *Titan Indem. Co. v. Travelers Prop. Cas. Co.*, 181 P.3d 303, 306 (Colo. App. 2007) (observing that Commercial General Liability Insurance "protects businesses from third-party claims for personal injury or property damage resulting from accidents").

[27]Doc. 50-3 at 3, 14.

liability insurance policy, which would cover Higby's operations and would shelter DCP and National Helium from liability resulting from Higby's operations.  But the MSA did not require Higby to provide insurance covering damages caused by DCP or National Helium's operations, just Higby's *own* operations.  Moreover, the CIM policy was not required by the MSA, so Higby was not required to add DCP and National Helium to that policy.  Thus, Defendants' additional assureds argument fails.

The Court does not reach the question of whether the Colorado law forbidding subrogation agreements like that allegedly found in the MSA, Colo. Rev. Stat. § 13-21-111.5(6)(b), because the Court has determined that the MSA does not apply to the CIM policy.

### C.  Higby's Alleged Contract Breach.

Defendants argue that Higby may have failed to purchase the Commercial General Liability insurance required by the MSA.  The Court will assume, for the sake of argument, that this is true.  Defendants go on to draw two conclusions from this allegation.  First, Defendants claim, if Higby did not obtain such insurance, it was in breach of the MSA, and thus, neither Higby nor National Insurance can recover from DCP.  But this conclusion does not follow.  The MSA lists several remedies for a material breach of the contract,[28] but none of those remedies would prevent recovery in this case.  Defendants cite *Richmond v. Grabowski* for the proposition that a party who breaches his contract by failing to obtain insurance and by failing to notify the other party of such failure could not recover from the other party for fire damage caused by the

---

[28]Doc. 40-1 at 9.

other party,[29] but that case is inapposite.  In that case, the parties agreed that the damage caused by the fire would have been covered by the insurance required by the contract.  In contrast, the Court has determined here that the damage was covered by an insurance policy *not* required by the MSA, and so Plaintiffs' alleged failure to procure the insurance required by the MSA has no bearing on their claims in this case.

Second, Defendants suggest that the party who agrees to procure the insurance and fails to do so assumes the position of the insurer and, thus, the risk of loss.  Taking that argument as true, Plaintiffs' alleged failure to procure insurance still does not preclude their claims in this case.  If they assumed the position of the insurer as outlined in the MSA, they would be the insurer only for claims covered by a commercial general liability policy, not for the claim at issue in this case.  Because the MSA does not address the CIM policy and requires only liability insurance, it does not affect the claim in this case, and so any alleged breach of the MSA is immaterial.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Cross Motion for Summary Judgment (Doc. 42) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 39) is DENIED.

**IT IS SO ORDERED.**

Dated: November 29, 2012

---

[29]781 P.2d 192, 194 (Colo. App. 1989).

11

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE