## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HIGBY CRANE SERVICE, LLC, and )
NATIONAL INTERSTATE )
INSURANCE CO., )
           )
        **Plaintiffs,** )
           )
vs. )
           )      **Case No. 10-1334-JAR**
NATIONAL HELIUM, LLC., )
a Delaware company;  and )
DCP MIDSTREAM, LP, a Delaware )
limited partnership, )
           )
        **Defendants.** )
_____)

## MEMORANDUM AND ORDER

        This litigation arose as a result of a fire in the National Helium Plant near Liberal, Kansas in August 2008, causing damage to one of Plaintiff Higby Crane, LLC's ("Higby") cranes. Plaintiff National Insurance Company ("National") is an insurance company licensed to issue general liability insurance policies in Kansas.  National brought this action against Defendants National Helium, LLC. ("National Helium"), which owned the plant, and Duke Energy Field Service, LP ("DEFS"), which operated the facility, claiming a right of subrogation through its insured, Higby.  The parties filed cross-motions for summary judgment; the Court granted National's motion and denied Defendants' motion, awarding damages in the amount of $253,848.10, the amount of loss from the crane's destruction.  On May 13, 2014, the Tenth Circuit Court of Appeals issued its mandate reversing the Court's entry of summary judgment in favor of Plaintiffs and remanding for further proceedings.[1]

---

[1]*Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157 (10th Cir. 2014).

Defendants filed a Second Motion for Summary Judgment (Doc. 72); after the Court heard oral argument on December 18, 2014, Plaintiffs filed a Cross-Motion for Summary Judgment (Doc. 84).  Both motions are currently before the Court and are fully briefed, and the Court is prepared to rule.  As described more fully below, the Court grants Defendants summary judgment in part on the issue of whether DCP is covered for its own negligence under the applicable policy, denies the claim that National waived its subrogation rights, and denies without prejudice the claim for breach of contract and attorney's fees.  The Court denies Plaintiffs' motion with respect to its claim that the policy provision at issue is void as well as its claim that DCP's coverage is barred under the "property you own" exclusion, and will permit further discovery on the "property in the possession, care, or control of the insured" exclusion and willful misconduct claim or defense.

## I.   Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under the

---

[2]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7]  Where, as here, a movant bears the burden of proof on a claim or defense, it must show that the undisputed facts establish every element of the claim entitling it to judgment as a matter of law.[8]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition

---

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8]*See id.* at 331 (Brennan, J., dissenting) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c) that would entitle it to a directed verdict if not controverted at trial.").

[9]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

transcript, or a specific exhibit incorporated therein."[12]  Rule 56(c)(4) provides that opposing

affidavits must be made on personal knowledge and shall set forth such facts as would be

admissible in evidence.[13]  The non-moving party cannot avoid summary judgment by repeating

conclusory opinions, allegations unsupported by specific facts, or speculation.[14]  "Where, as

here, the parties file cross-motions for summary judgment, [the Court is] entitled to assume that

no evidence needs to be considered other than that filed by the parties, but summary judgment is

nevertheless inappropriate if disputes remain as to material facts."[15]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it

is an important procedure "designed to secure the just, speedy and inexpensive determination of

every action."[16]  In responding to a motion for summary judgment, "a party cannot rest on

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the

mere hope that something will turn up at trial."[17]

## II.    Uncontroverted Facts and Procedural History

Many of the relevant facts in this case are uncontroverted for purposes of summary

judgment.  At all material times, Defendant Duke Energy, renamed DCP Midstream, LP

---

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[16]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[17]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

("DCP"),[18] has operated, and its wholly owned subsidiary, National Helium, has owned the National Helium Plant, a gas processing plant near Liberal, Kansas.  National Helium is an affiliate of DCP.

On or about November 1, 2001, DCP and Higby entered into a Master Service Agreement ("MSA") that established general terms and conditions that apply to every oral or written contract between the parties.  DCP is identified as "Company" in the MSA and Higby is identified as "Contractor."

The relevant provisions of the MSA read as follows:

9. <u>INSURANCE</u>

9.1 <u>Required Coverages.</u>  Throughout the term of this Agreement [Higby] shall carry and pay for . . . Commercial General Liability Insurance covering liabilities for death and personal injury and liabilities for loss of or damage to property with combined single limit of not less than $3,000,000 per occurrence.  This insurance must cover all operations of [Higby] required to fulfill this agreement.

. . .

9.2 <u>Additional insureds.</u>  The insurance policies described above shall include [DCP], its affiliates and coventurers, and their directors, officers, and employees as additional assureds.  All insurance required hereunder and provided by [Higby] shall be primary coverage.

9.3 <u>Waiver of Subrogation.</u>  The insurance policies described above shall, in addition be so written or endorsed to provide that

---

[18]Defendants filed an affidavit attesting that "[a]s of November 1, 2001, DCP, which was then named Duke Energy Field Services, LP, and Higby Crane entered into the attached Master Service Agreement, Contract No. MSA-MC01079."  Doc. 16 at 1; *see also* Doc. 43-1 at 3 (Certificate of Name Change).  For clarity, the remainder of this order will use DCP.

> the insurer shall assign and relinquish unto [DCP] (i) any right of recovery which the insurer may have or acquire against [DCP], its affiliates or coventurers, or their directors, officers, or employees for payments made or to be made under such policies, and (ii) any lien or right of subrogation which the insurer may have or acquire for payments made or to be made to any person who asserts a claim against [DCP], its affiliates or coventurers or their directors, officers, or employees.

Higby obtained a Commercial Inland Marine ("CIM") policy from National Insurance, covering risks of direct physical loss from an external cause to covered property. The CIM policy includes a subrogation clause that states if in the event of a loss, Higby "shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, [Higby] will, if requested by [National], assign and transfer such right of action to [National] to the extent of payment made by [National]."[19]

On or about August 19 to August 20, 2008, Defendants, in the course of operating the National Helium Plant, negligently released or vented various gases in such a manner that a vapor cloud formed and ignited. As a result of the fire, the crane owned by Higby and insured by National was damaged to the extent it was inoperable and required repair at a cost of $253,848.10. National paid Higby under the CIM policy, and Plaintiffs brought this action to recover for the loss. Defendants counterclaimed that Higby breached the MSA by failing to obtain a CGL policy that would have indemnified DCP for its negligence, and Higby's failure to preclude this suit is a breach of contract between Higby and Defendants.

---

[19]See Doc. 40-3 at 6.

### *Cross-Motions for Summary Judgment*

On November 29, 2012, this Court granted Plaintiffs' motion for summary judgment and denied Defendants' motion for summary judgment.[20]  The Court found it immaterial whether Higby had purchased a CGL policy naming DCP as an additional insured because the CGL would not have covered DCP's negligence in this case.  The MSA, the Court reasoned, required Higby to purchase insurance covering only damage caused by Higby's operations; since the damage here had been caused by DCP's operations—not Higby's—the CGL policy would not have covered DCP for its negligence in damaging the crane.

The Court then found that the damage to the crane was covered by the CIM policy Higby had purchased from National.  Because the MSA did not require Higby to purchase the CIM policy, the MSA's provisions were inapplicable to the CIM policy.  Thus, the MSA did not require Higby to name DCP as an additional insured under the CIM policy, nor did it require National, the CIM insurer, to waive its subrogation rights against DCP.  The Court therefore held that Higby and National were entitled to summary judgment for the damage DCP negligently caused to Higby's crane.

### *Tenth Circuit Opinion*

On  May 13, 2014, the Tenth Circuit reversed and remanded for further proceedings.[21] The court held that the MSA was ambiguous as to the types of liabilities the required CGL policy would have covered.  That CGL policy, according to the court, might have covered DCP's

---

[20]Doc. 54.

[21]*Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157 (10th Cir. 2014).

liability to Higby for the damage to the crane in this case.[22]  Summary judgment was therefore inappropriate.

Though Higby and National did not produce a CGL policy on appeal, the Tenth Circuit noted that standard CGL policies frequently use an additional-insured endorsement that extends coverage to liabilities "arising out of the named insured's operations."  Under case law construing such language, the court found a typical CGL policy "may well have provided coverage [for DCP's liability] here."[23]  The court reached that conclusion for two reasons.  First, several cases have interpreted standard CGL policies to cover liabilities for claims brought by a named insured (here, Higby) against an additional insured (here, DCP)—not just for claims brought by third parties.[24]  Second, several cases have also interpreted liabilities to "aris[e] out of the named insured's operations" even where the named insured simply leaves its equipment passively sitting at a work site, as Higby did here.[25]  In other words, because Higby left its crane at the plant in the course of Higby's operations, DCP's liability for the crane damage might have arisen out of Higby's operations—and thus triggered coverage under the CGL policy—even though it was DCP's negligent conduct that most directly caused the crane damage.

It did not matter to the Tenth Circuit whether other cases have construed standard CGL policies differently: the cited cases showed that the MSA did not unambiguously support

---

[22]*Id.* at 1161.

[23]*Id.*

[24]*See id.* at 1162–64.

[25]*See id.* at 1162–65.

Plaintiffs' position that the required CGL policy would not have covered DCP's negligence.[26]

Summary judgment for Plaintiffs was therefore inappropriate.[27]  The court remanded the case for

consideration of whether the CGL policy contemplated by the MSA would have protected DCP

against liability for damaging Higby's crane.  The court advised the parties to submit evidence of

their intent regarding the CGL requirement in the MSA.  The court also stated that this Court, on

remand, is not limited to the arguments made on appeal; the Court may consider, for example,

the applicability of Colo. Rev. Stat. Ann. § 13-21-111.5, which voids some insurance contracts

indemnifying a party against its own negligence, as well as any CGL policy exclusions for

damage to property owned by the insured.[28]

### Post-Remand Facts

DCP sent letters to Higby dated February 16 and October 19, 2005, which included a

"Certificate of Insurance Requirements," that states:

> Use the CGL Additional Insured status form ISO CG 20 10 or
> equivalent for General Liability additional insured status.  If your
> insurance carrier/company requires a written endorsement to
> provided waiver of subrogation and/or additional insured, you
> must provide those endorsements with your insurance
> certificate(s).

Higby obtained a CGL coverage, policy period September 13, 2007 to September

---

[26]*Id.* at 1164 (noting that no contrary authority had been cited).

[27]*Id.* at 1163–64, 1166.

[28]*See id.* at 1166.

13, 2008, purporting to cover DCP as an additional insured (the "CGL Policy").[29]  The CGL

Policy was renewed for the period September 13, 2008 to September 13, 2009.  National is the

insurer on the CGL Policy as well as on the CIM Policy. The CGL Policy includes an Additional

Insureds endorsement that states the

> entity(ies) identified on Certificates of Insurance on file with the
> Company are Additional Insureds under this policy as respects the
> operations of the Named Insured, but only with respect to the
> liability ***arising out of the operations*** performed by the Named
> Insured and the coverage shall not be broader than coverage
> afforded the Named Insured.[30]

This endorsement was on form AIGL 001 (08/02).  National produced no Additional Insured

Certificate that reflected who the additional insureds were for the CGL Policy it produced.

The CGL Policy contained a waiver of subrogation form that states:

> We waive any right of recovery we may have against the person or
> organization shown in the Schedule above because of payments we
> make for injury or damage arising out of your ongoing operations
> . . . . This waiver applies only to the person or organization shown
> in the Schedule above.[31]

The waiver form Schedule shows the person or organization as "[w]here required by written

construction contract."

Section I(1)(a) of the CGL Policy states that National "will pay those sums that the

insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

---

[29]Doc. 73, Ex. A.

[30]*Id.* at 0007 (emphasis added).

[31]*Id.* at 0048.

damage' to which this insurance applies."[32]  Section I(2)(j) excludes coverage for property

damage to "[p]roperty you own, rent or occupy," or to "[p]ersonal property in the care, custody,

or control of the insured."[33]  The Policy defines property damage as "[p]hysical injury to tangible

property, including all resulting loss of use of that property."[34]  The Policy defines the terms

"you" and "your" to "refer to the Named Insured shown in the Declarations, and any other

person qualifying as a Named Insured under this policy."[35]

Section 22(d) of the MSA states that if

> either party commits any material breach of this Agreement
> including, without limitation, any breach of any indemnity
> obligation, in addition to any other remedy that the aggrieved party
> may have at law or equity, it shall be entitled to recover all costs,
> including court costs and attorney's fees, incurred in any
> proceeding wherein the aggrieved party seeks redress for such
> breach.[36]

## III.    Discussion

The Tenth Circuit found that the MSA is ambiguous regarding what specific coverage the

CGL Policy would have to provide, and remanded for further proceedings to determine whether

the required CGL policy contemplated by the parties would have protected DCP against liability

to Higby.  The court did not limit the issue on remand to the arguments made on appeal, and this

---

[32]*Id.* at 0009.

[33]*Id.*

[34]*Id.* at 0023.

[35]*Id.* at 0009.

[36]Doc. 40-1 at 11.

Court now has before it the CGL Policy obtained by Higby.  The cross-motions for summary judgment present the central question of whether the anti-subrogation rule prohibits Plaintiffs' subrogation action against DCP for loss resulting from DCP's negligence.  The parties raise several additional arguments.  Plaintiffs argue that Higby owed no contractual obligation to procure insurance coverage for DCP for the loss at issue and even assuming that such a contractual obligation existed, the CGL Policy expressly excludes coverage under the circumstances of this case.  Defendants contend that Higby breached its MSA with DCP because it failed to cause National to waive its right to subrogation and because Higby failed to provide the insurance protections that DCP contracted for in the MSA.

### A.       Whether DCP is a Party to the MSA

Plaintiffs controvert DCP's assertion that DCP is a party to the MSA.  Plaintiffs state that Higby entered into the MSA in 2001 with DEFS, not DCP, and that there is no evidence DEFS assigned its interest in the MSA to DCP.  This argument merits little discussion.  Both this Court and the Tenth Circuit assumed DCP was a party to the MSA since DCP filed an affidavit stating DEFS changed its name to DCP.

### B.       Whether the CGL Policy Named DCP as Additional Insured

DCP points out that Plaintiffs did not produce a CGL policy prior to this Court's summary judgment ruling, and only on appeal did they begin intimating that such a policy

existed.[37]  On remand, however, Plaintiffs did produce a CGL Policy, with National as the

insurer.  But as DCP notes, there is no evidence that the CGL Policy lists DCP as an additional

insured: the policy identifies "additional insureds" as those entities named on a certificate of

insurance on file with National,[38] but Plaintiffs cannot locate a certificate of insurance naming

DCP.

Plaintiffs respond that they have never denied that DCP is an additional insured and that

DCP knows it was covered under the CGL Policy.  According to Plaintiffs, DCP regularly

required proof that it was listed as an additional insured under the CGL Policy; if it was not,

DCP would place the MSA on "inactive status" and refuse to work with Higby.[39]  Thus, if DCP

was not covered under the CGL Policy at the time of the fire, DCP would have placed the MSA

on inactive status and refused to continue working with Higby at some point prior to the fire.

Plaintiffs fault DCP for failing to produce any of the documentation DCP received from Higby

proving Higby's purchase of a CGL policy covering DCP.

DCP concedes that it has in its possession a certificate of CGL insurance for the year

following the fire; but DCP has no certificate of insurance for the year the incident occurred.[40]

But even if it could locate a certificate of insurance for the relevant year, DCP argues that the

---

[37]Higby responds that during initial discovery, DCP requested only the policy that covered the crane damage in this case.  Because Higby believes the CIM policy covered the damage and the CGL policy does not, it produced only the CIM policy.

[38]Doc. 73, Ex. A at 0007.

[39]*See, e.g.*, Doc. 74-2 at 21 (notifying Higby in 2005 that DCP had placed the MSA on inactive status because it had not received the Certificate of Insurance proving that DCP was covered under a CGL policy).

[40]Doc. 75 at 5; Doc. 75-1 ¶¶ 2–4 (aff. of Tina Arneson).

certificate of insurance would be insufficient to create an additional-insured relationship between National and DCP.  Under Colorado law, a certificate of insurance does not create an additional-insured relationship, but is merely evidence that an insurance contract has been issued.[41]  Only the underlying CGL Policy can create an additional-insured relationship.  That policy, however, does not name DCP as an additional insured, but simply states that additional insureds are those entities listed on a certificate of insurance on file with National.  According to DCP, if National does not have on file a certificate of insurance identifying DCP as an additional insured, there is no showing that Higby and National did all that was necessary to make DCP an additional insured on the CGL policy.  Because Higby failed to procure that insurance, DCP contends, Higby "assumes the position of the insurer and, thus, the risk of loss."[42]  DCP also argues that if Higby cannot recover against DCP, then neither can National: "the subrogated insurer [has] no greater rights than the insured."[43]

However, DCP's argument on breach only applies if the CGL Policy would not have covered DCP's negligence.  Indeed, it was this issue on appeal that drove the Tenth Circuit's directive on remand—that if Higby had obtained the CGL Policy required by the MSA, the policy would have covered DCP for its negligence in damaging the crane, and thus breached the MSA.  Moreover, the Court notes that DCP seeks summary judgment on its breach of contract

---

[41]*See, e.g.*, *Summit Bank & Trust v. Am. Modern Home Ins. Co.*, No. 12-cv-2395-JLK, 2013 WL 1294273, at *2–3 (D. Colo. Mar. 27, 2013).

[42]*Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1160–61(10th Cir. 2014) (citing *Richmond v. Grabowski*, 781 P.2d 192, 194 (Colo. App. 1989)).

[43]*United Fire Grp. v. Powers Elec., Inc.*, 240 P.3d 569, 573 (Colo. Ct. App. 2010).

claim, and thus bears the burden of proving every element of its claim.  Plaintiffs have at the least raised an issue of fact whether the CGL Policy names DCP as an additional insured. Accordingly, the Court will proceed to analyze whether the CGL Policy protects DCP against its liability to Higby.

### C.      Whether the CGL Policy provides coverage for DCP's Negligence

The MSA requires Higby to procure CGL coverage for "all operations of Contractor required to fulfill this Agreement." The Tenth Circuit found this language to be ambiguous because it did not specify how the liability must relate to Higby's operations.  Because the Court now has before it the actual CGL Policy, however, it need not speculate on what specific coverage the parties intended the policy to provide, and instead looks to the language of the policy.  Here, the CGL Policy endorsement provides coverage for Additional Insureds with respect to the operations of the Named Insured, "but only with respect to the liability arising out of the operations performed by the Named Insured."

 Insurance policies are subject to the normal rules of contract interpretation.[44]  The court construes the plain language of the contract to effectuate the intent of the parties.[45]  Under Colorado law, courts should first seek to derive the parties' intent from the plain language of the contract, and if this is not possible, they should then "consider extrinsic evidence from which [the parties'] intent may be inferred."[46]  Only after these methods fail may a court, "as a last

---

[44]*Radil v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 233 P.3d 688, 692 (Colo. 2010).

[45]*Id.* (citing *State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165, 166–67 (Colo. 1993)).

[46]*Moland v. Indus. Claim Appeals Office*, 111 P.3d 507, 511 (Colo. Ct. App. 2004).

resort," construe ambiguities against the drafter.[47]  A contract is ambiguous where it is reasonably susceptible of more than one meaning.[48]  "However, mere disagreement between the parties concerning the meaning of terms does not create an ambiguity."[49]  "Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage."[50]

### 1.    *Liberty Mutual* and *Travelers* Decisions

The Tenth Circuit found two cases particularly relevant to the issue whether the CGL Policy contemplated by the MSA would have covered liability for DCP's negligence.  The court first discussed *Liberty Mutual Fire Insurance Co. v. E.E. Cruz & Co.*[51]  There, as here, the additional insured sought coverage for its liability for damage to the named insured's property at the work site.  The City of New York had contracted with TAP Electrical Contracting to provide electrical systems for a project to install sewage retention tanks.  The City negligently caused sewage to flood the project site, resulting in damage to TAP's equipment stored at the site.  The contract between TAP and the City required TAP to obtain CGL insurance that named the City as an additional insured; the CGL protected insureds from "liability arising out of [TAP's]

---

[47]*Id.*

[48]*Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. Ct. App. 2008) (citation omitted).

[49]*Id.*

[50]*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

[51]475 F. Supp. 2d 400, 402–03 (S.D.N.Y. 2007).

ongoing operations performed for [the City.]"[52]

The insurer raised two arguments against coverage that parallel Higby's and National's arguments in this case.  First, it argued that the CGL policy protected the City only against claims by third parties, not by TAP.  TAP (like Higby) was the named insured and the City (like DCP) was an additional insured.  But the *Liberty Mutual* court rejected the insurer's argument, holding "agreements requiring that a party procure a policy protecting another party from liability and the resulting additional insured endorsements in commercial general liability policies are not construed to preclude coverage for the additional insured against claims of negligence by the named insured against the additional insured."[53]  Because the court found that the standard CGL policy protected the additional insured  from liability for a claim brought by the named insured, the Tenth Circuit found the case supported the position that the CGL policy would have protected DCP from liability for its negligence in this case.[54]  The circuit noted other cases to the same effect.[55]

Second, the insurer argued that the "damage sustained to TAP's equipment . . . [did not

---

[52]*Id.* at 403–04.

[53]*Id.* at 408.

[54]*See Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1162 (10th Cir. 2014).

[55]*See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 968–70 (Conn. 2013) (finding "no basis in the language of the [CGL] policy for limiting coverage to liability for harm to third parties"); *Feldman v. Transcontinental Ins. Co.*, No. 01-95-00362-CV,1996 WL 15619, at *4 n.4 (Tex. Ct. App. Jan. 18, 1996), *aff'd in part and rev'd in part sub. nom. by CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568 (Tex. 1998) ("In the absence of an 'insured versus insured' exclusion clause, we have not found any court that has interpreted the 'additional insured' . . . language in a standard commercial general liability policy to exclude coverage for an additional insured when sued by the named insured"); *Estate of Sodorff v. United S. Assurance Co.*, 980 F. Supp. 1004, 1007 (W.D. Ark. 1997) (holding similarly, under an automobile insurance policy); *Broy v. Inland Mut. Ins. Co.*, 233 S.E.2d 131, 133 (W. Va. 1977); Couch on Insurance § 107:15 (3d ed. 2005).

17

arise] from the performance of TAP's ongoing operations, under the terms of the TAP CGL

Policy."[56]  It asserted that the mere presence of property and materials (like a crane parked at

DCP's plant) did not fall within the policy's definition of "operations," which instead required

some "action" by TAP.  But the court also rejected this argument, noting that "arising out of" is

construed broadly under New York law in general liability insurance contracts.[57]  According to

the court, the mere presence of TAP's equipment at the job site was part of the performance of

TAP's obligation under the contract; the City's liability for damage to the equipment thus arose

out of TAP's ongoing operations under the contract.[58]  Again, the court noted other authorities

holding similarly.[59]

The Tenth Circuit next discussed *Travelers Property Casualty Co. v. Farmers Insurance

Exchange*.[60]  The court found this case particularly relevant for two reasons: (1) as in this case,

Colorado substantive law governed, and (2) the case interpreted "arising out of" in a

commercial-liability policy to require only but-for causation between an insured's "use of leased

---

[56]*Liberty Mutual*, 475 F. Supp. 2d at 408.

[57]*Id.* at 409.

[58]*Id.* at 411.

[59]*See FH Martin Constr. Co. v. Secura Ins. Holdings, Inc.*, No. 289747, 2010 WL 1873087 (Mich. Ct. App. May 11, 2010) (extending the concept of "operations" to encompass the positioning of equipment); *Colo. Cas. Ins. Co. v. Safety Control Co., Inc.*, 288 P.3d 764, 773 (Ariz. Ct. App. 2012) (same); *Duininck Bros. v. Howe Precast, Inc.*, No. 4:06-cv-441, 2008 WL 4372709, at *8 (E.D. Tex. Sept. 19, 2008) (same); *see also* Couch on Insurance § 101:52 (3d ed. 2005) (finding that "arising out of" does not typically require direct proximate causal connection; some courts have found "arising out of" equivalent to but-for causation, while others have found it somewhere between but-for and proximate causation).

[60]240 P.3d 521 (Colo. App. 2010).

premises" and the harm resulting in the insured's liability.[61]

The issue in *Travelers* was whether a commercial-liability policy protected an insured shopping center from liability to someone who had visited the tenant's restaurant and was injured when she slipped on some ice in the parking lot.  The court recognized that coverage "depends on the nexus between the covered property and the injuries complained of."[62]  In particular, "[t]he party seeking coverage must show that except for the use of the insured property, the accident or incident in question would never have taken place."[63]  The court denied coverage, explaining that the restaurant patron's trip to the restaurant was not the but-for cause of her injury because she might have slipped on the ice even if the restaurant did not exist: she might have gone to the shopping center to visit the premises of another merchant.[64]

Though *Travelers* denied coverage, the Tenth Circuit found that case might support a finding of CGL coverage for DCP's negligence here.  The court viewed Higby's operations as the but-for cause of the crane damage:

> Here, though, the crane was exposed to the fire because, and only because, it was on the site to perform work under the [MSA].  Nothing else would have attracted it to the site; and its work location was at the point of danger.  In our view, *Travelers* suggests that there was a sufficient causal relation between Higby's operations and the fire damage to the crane to say that the

---

[61]*Id.* at 522.

[62]*Id.*

[63]*Id.* at 523–24.

[64]*See id.* at 524.

fire damage "arose out of" Higby's operation.[65]

### 2.    Whether the Additional Insured Endorsement is limited to Higby's negligence

DCP points out that although the additional-insured endorsement language in the CGL Policy in this case does not appear to be a standard additional endorsement, it contains language substantially similar to the standard endorsement considered by the Tenth Circuit on appeal.[66] Not surprisingly, DCP adopts the Tenth Circuit's argument for why the CGL Policy covers its negligence: liability under similar CGL policies has been interpreted to "aris[e] out of the operations" of the named insured where the named insured leaves its equipment passively sitting at a work site.[67] As the Tenth Circuit noted, *Liberty Mutual* is not an isolated ruling, and many courts have held that additional insured coverage extends beyond protection against liability to third parties when there is no basis in the language of the CGL policy for limiting coverage to third parties.[68] Like the policy in those cases, the CGL Policy here did not included an "insured versus insured" exclusion clause, nor does the definition of "property damage" differentiate between damage to Higby's property and damage to other property.[69]

---

[65]*Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1165 (10th Cir. 2014).

[66]*See id.* at 1161–62 ("[M]ost insurers apparently used an additional-insured endorsement that extended coverage to liability 'arising out of the named insured's operations.'").

[67]*See id.* at 1162–6 (citing the *Liberty Mutual* and *Travelers* decisions).

[68]*Id.* at 1162 (citing cases); s*ee Marathon Ashland Pipe Line LLC v. Maryland. Cas. Co.*, 243 F.3d 1232, 1240 (10th Cir. 2001) (applying Wyoming law and finding an additional-insured endorsement to cover an additional insured's negligence even where the named insured was not negligent); *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 254–55 (10th Cir. 1993) (same, applying Kansas law).

[69]Doc. 73, Ex. A at 0023.

In Plaintiffs' view, however, the additional-insured endorsement applies only to liability arising from Higby's own negligent acts or omissions. Plaintiffs attempt to distinguish *Liberty Mutual* on the basis that the additional-insured endorsement applicable in that case is different than the one at issue here. The *Liberty Mutual* endorsement extended to "liability arising out of [the named insured's] ongoing operations performed for [the additional] insured."[70] The endorsement at issue here extends coverage only for "liability arising out of the operations performed by the named insured." Plaintiffs argue that this endorsement, in contrast to the *Liberty Mutual* endorsement, clearly required the liability to arise "from something Higby did or did not do."

The Court disagrees. The import of the Tenth Circuit's discussion of *Liberty Mutual* is that, under additional-insured endorsements similar to the one at issue here, liability for negligence may arise out of the named insured's operations even though only the additional insured is liable for negligence.[71] All that is required to trigger CGL coverage, under *Liberty Mutual* and the other cases cited by the Tenth Circuit, is the existence of a sufficient causal nexus between the named insured's operations and the liability—whether that is the liability of the named insured or the liability of the additional insured.[72]

---

[70]475 F. Supp. 2d 400, 404 (S.D.N.Y. 2007).

[71]*See Higby*, 751 F.3d at 1163 ("The mere presence of [the named insured's] equipment . . . at the job site, said the [*Liberty Mutual*] court, is part of the performance of [the named insured's] obligation under the contract. The court explained that it was immaterial that the occurrence was allegedly unrelated to [the named insured's] work under the Contract because New York law provides coverage even when the cause of the harm had *nothing* to do with the named insured's work for the additional insured.") (internal quotation marks and citations omitted)).

[72]*See Liberty Mutual*, 475 F. Supp. 2d at 409, 411; *cf. Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800 (E.D. Pa. 1983) (holding that there was no coverage for additional insured's negligence where the endorsement stated that the additional insureds were covered "only to the extent of liability resulting from occurrences arising out of negligence

Plaintiffs further assert that DCP's letters to Higby required Higby to purchase a CGL policy with an additional-insured endorsement that is "equivalent" to Insurance Services Office ("ISO") Form CG 20 10 07 04.  That form extends coverage to liability "caused, in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured."  Thus, according to Plaintiffs, the additional-insured endorsement in the CGL Policy actually purchased must mean the same thing as the endorsement language in Form CG 20 10 07 04.  Plaintiffs cite several cases applying this ISO form language, all finding additional-insured endorsements to cover liability only where the liability stems from the named insured's negligence.[73]  Plaintiffs argue that the endorsement actually purchased by Higby must likewise apply only where Higby's negligent acts give rise to the liability.

While the Tenth Circuit found the language in the MSA was ambiguous regarding what specific coverage the contemplated CGL Policy would have to provide, that court did not have before it the actual policy purchased by Higby.  On remand, neither party argues that the CGL Policy or additional insured endorsement is ambiguous, and thus those contracts must be construed according to their own terms.  Even if the Court were to consider the ISO form language, however, the form language has no bearing on the issue at hand.  The ISO was not required by the MSA.  The letter between the parties in October 2005 includes the note to use the

of [named insureds]").

[73]*See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598–99 (5th Cir. 2011) (applying Texas law); *Thunder Basin Cola Co. v. Zurich Am. Ins. Co.*, 943 F. Supp. 2d 1010, 1015 (E.D. Mo. 2013) (applying Wyoming law); *JNJ Foundation Specialists, Inc. v. D.R. Horton*, 717 S.E. 2d 219, 226 (Ga. Ct. App. 2011) (applying Georgia law).

ISO form CG 20 10 or its equivalent. Higby did not purchase a policy that used the ISO form language, but purchased a policy with the additional-insured endorsement form AIGL 001, which National provided. Although Plaintiffs concede the forms are equivalent and meet the general requirements of the MSA, it does not follow that the forms or language must be identical.

Accordingly, the Court finds that it is clear from the language in the additional insured endorsement that DCP's negligence is covered under the CGL Policy.

### 3. Whether DCP's liability arose out of Higby's operations

Plaintiffs next contend that, contrary to the reasoning of the Tenth Circuit, *Travelers* supports their position that liability did not "arise out of" Higby's operations. *Travelers* held that the phrase "arising out of" in a commercial liability policy requires only but-for causation.[74] According to Plaintiffs, Higby's operations were not the but-for cause of liability in this case: "DCP would have to show but for the presence of the crane the fire would have never taken place."

Plaintiffs' but-for causation argument is misplaced. Under the terms of the additional-insured endorsement, a but-for connection must exist between Higby's operations and the *liability* for the fire, not between Higby's operations and the fire itself. Indeed, as the Tenth Circuit suggested, Higby's operations were the but-for cause of liability here: but for Higby's operations for DCP, Higby would not have parked its crane at the plant; but for Higby's parking

---

[74]240 P.3d at 523.

the crane at the plant, the fire would not have damaged the crane; and but for the fire damage to

the crane, DCP would not have incurred liability.[75]  Thus, there was a sufficient causal relation

between Higby's operations and the fire damage to the crane to say that the fire damage "arose

out of" Higby's operation, and the CGL Policy covered DCP's negligence.

### 4.      Whether clear and unequivocal expression of intent was required

Plaintiffs also invoke Colorado law that an agreement indemnifying a party against its

own negligence must be expressed in clear and unequivocal terms.[76]  Plaintiffs argue that DCP

failed to do so here.  While the rule cited by Plaintiffs is accurate, they cite no authority applying

this proposition to additional-insured provisions in contracts.[77]  Moreover, this rule does not

ordinarily apply to contracts between sophisticated parties with equal bargaining power, and

Plaintiffs do not address whether the rule would apply to this particular contract.[78]

### D.      Whether the Anti-Subrogation Rule Bars Recovery

An insurer has no right of subrogation against its own insured.[79]  "Under the anti-

subrogation rule, an insurer may not seek recovery against its insured on a claim arising from the

---

[75]*Higby*, 751 F.3d at 1165.

[76]*See Constable v. Northlenn, LLC*, 248 P.3d 714, 716 (Colo. 2011).

[77]*See Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 482 (Ind. Ct. App. 2000) (rule of strict construction of indemnification agreements does not apply to agreements to obtain insurance).

[78]*Constable*, 248 P.3d at 716.

[79]*DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 351 (Colo. Ct. App. 2009) (citing *Cont'l Divide Ins. Co. v. W. Skies Mgmt., Inc.*, 107 P.3d 1145, 1148 (Colo. Ct. App. 2004)).

24

risk for which the insured was covered."[80]  As previously discussed, the claim for negligence

arose out of Higby's operations, which is the risk for which DCP is an additional insured under

the CGL Policy.  Because National is seeking recovery from DCP for the risk covered under the

CGL Policy, the anti-subrogation rule would apply unless, as Plaintiffs contend, application

would violate Colorado public policy or, alternatively, an exemption under the CGL Policy

applies.  The Court discusses each issue in turn.

### 1.    Choice of law

The MSA states that Colorado law applies to the MSA and "each contract hereunder."[81]

"Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions

under Kansas choice-of-law rules."[82]  The parties agree that Colorado law governs all issues

concerning the interpretation and performance of the MSA in this action.  However, Plaintiffs

maintain that either Kansas or Oklahoma law applies to the CGL Policy.  Plaintiffs concede,

however, that the three states apply the same general principles of contract interpretation such

that the result does not turn on which state's law applies.  The Court will apply Colorado law to

the CGL Policy as well.

---

[80]*Id.*

[81]Doc. 73, Ex. A at 0009.

[82]*Altrutech, Inc. v. Hooper Holmes, Inc.,* 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998).

### 2.      Colorado Anti-Indemnification Statute

Plaintiffs argue that the Additional Assureds provision found at Paragraph 9.2 of the

MSA is void and unenforceable under C.R.S. § 13-21-111.5(6).  That statute, which became

effective July 1, 2007, states in relevant part,

> any provision in a construction agreement that requires a person to
> indemnify, insure, or defend in litigation another person against
> liability for damages arising out of death or bodily injury to
> persons or damage to property caused by the negligence or fault of
> the indemnitee or any third party under the control or supervision
> of the indemnitee is void as against public policy and
> unenforceable. . . .

> This subsection (6) does not apply to contract clauses that require
> the indemnitor to purchase, maintain, and carry insurance covering
> the acts or omissions of the indemnitor, nor shall it apply to
> contract provisions that require the indemnitor to name the
> indemnitee as an additional insured on the indemnitor's policy of
> insurance, but only to the extent that such additional insured
> coverage provides coverage to the indemnitee for liability due to
> the acts or omissions of the indemnitor.  Any provision in a
> construction agreement that requires the purchase of additional
> insured coverage for damage arising out of death or bodily injury
> to persons or damage to property from any acts or omissions that
> are not caused by the negligence or fault of the party providing
> such additional insured coverage is void as against public policy.[83]

The statute defines "construction agreement" as

> [A] contract, subcontract, or agreement for materials or for labor
> for the construction, alteration, renovation, repair, maintenance,
> design, planning, supervision, inspection, testing, or observation of
> any building, building site, structure, highway, street, roadway
> bridge, viaduct, water or sewer system, gas or other distribution

---

[83]Colo. Rev. Stat. § 13-21-111.5(6)(b) and (d)(I).

system, or other work dealing with construction or for any moving,
demolition, or excavation connected with such construction.[84]

DCP contends that the Anti-Indemnification Statute does not apply because the
applicable amendment did not become effective until nearly six years after the parties entered
into the MSA.  Plaintiffs argue that the MSA is not the contract at issue, but instead the critical
inquiry under the statute is the date the parties entered into the contract pertaining to the work
that Higby was performing at the time of the fire.  That work order was issued August 18, 2008,
one year after the effective date of the statute.  As DCP points out, however, the CGL Policy that
covers it as an additional insured was issued September 11, 2007, and thus could not have been
issued pursuant to the work order.  It is uncontroverted that the MSA required the purchase of a
CGL Policy; there is no such provision in the 2008 work order.[85]  Moreover, because the Anti-
Indemnification Statute specifically applies to construction agreements, and not to MSA's, it is
not applicable.[86]

Nevertheless, Plaintiffs assert that the parties accounted for the possibility that changes in
Colorado law "may subsequently abrogate or otherwise alter the scope of certain terms and
conditions going forward" in Paragraph 15.2 of the MSA.  That paragraph refers to the Risk
Structure provision found in Paragraph 8 of the MSA, and states, "the Parties specifically agree

---

[84]*Id.* § 13-21-111.5(6)(e)(1).

[85]Doc. 85, Ex. A.

[86]*Cf.* La. Stat. Ann. § 9:2780, subd. I (1987) (anti-indemnification statute specifically stating master service agreement entered into before the effective date of the statute is covered by the statute); Tex. Ins. Code § 151.102 (anti-indemnification statute that includes language broadening ban beyond construction contracts to "an agreement collateral to or affecting a construction contract).

that, if any provision of Paragraph 8 is determined to be unenforceable or in contravention of any applicable law, such provision shall be deemed modified to the minimum extent."[87]   Paragraphs 8.1 and 8.2 address the parties' contractual indemnification obligations for an injury or death of their respective employees or invitees; 8.5 addresses third party and property damage claims and liabilities: "[a]s to claims and liabilities not specifically provided for in this Agreement, the Parties shall rely on such rights and remedies as they may have at law or in equity and on the insurance to be provided under Paragraph 9 below."

Plaintiffs argue that when read as a whole, the MSA is "a forward looking agreement" that supplies the general terms and provisions for the contracts that the parties may enter into in the future, and that Paragraph 15.2 confirms this intent.  Plaintiffs urge that the fact that the parties may not have predicted that subsequent changes in Colorado law may also impact the validity and enforceability of the insurance requirements set forth in Paragraph 9 does not somehow permit those provisions to escape the force and effect of the Anti-Indemnification Statute, and that the statute is equally applicable to both paragraphs to the extent that the terms of the MSA conflict with the statute.

The Court disagrees. Paragraph 15.2 has no bearing on what the parties anticipated as to additional insured coverage required in Paragraph 9.  Paragraph 15.2 expressly recognized the possibility that the risk-shifting provisions with respect to the obligation to indemnify might become unenforceable under Colorado law, giving a specific example: "if the obligation to indemnify for claims of injury or death to one's own employee is ruled to be unenforceable to

---

[87]Doc. 73, Ex. A at 0009.

the extent that it requires the indemnitor to indemnify the indemnitee for the indemnitee's own negligence."[88]   Thus, when the MSA was executed in November 2001, the parties clearly anticipated specific changes to the law with respect to the indemnification requirements found at Paragraph 8.   No such provision was included with respect to the insurance requirements provisions found in Paragraph 9; indeed, the applicable law did not go into effect for nearly six years after the MSA.   As Plaintiffs note, the court should interpret an agreement in its entirety and give effect to all provisions where possible.[89]   The MSA also contains a general severability provision at Paragraph 15.3 that applies to any provision of the MSA that is held invalid, illegal, or unenforceable.   Plaintiffs' interpretation would effectively extend modification of the parties' indemnification requirements in a specified provision of the contract based on anticipated future changes to a specific area of the law, to a section of the contract that did not anticipate or discuss any such modifications with respect to additional insured coverage.   The Court cannot subscribe to this interpretation of the MSA.

### 3.      CGL Policy Exclusions

Even if the terms of the additional-insured endorsement extend to DCP's negligence, Plaintiffs contend the CGL Policy excludes coverage here.   Plaintiffs stress that under the additional-insured endorsement, coverage for DCP cannot be broader than the coverage afforded

---

[88]*Id.*

[89]*See, e.g., Fed. Deposit Ins. Co. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013).

Higby.[90]  According to Plaintiffs, DCP is subject to any policy exclusions Higby is subject to.

Higby relies on two CGL exclusions to bar coverage.  Specifically, the CGL Policy states that

"this insurance does not apply to . . . property damage to" (1) "property you own," or (4)

"personal property in the care, custody or control of the insured."[91]  The insurer bears the burden

of proving that a particular loss falls within an exclusion in the contract.[92]  If a limitation or

exclusion in a contract is unambiguous, that limitation or exclusion must be enforced.[93]

### a.      Property You Own

Plaintiffs argue that the plain language of the "damage to property" exclusion bars

coverage for "property damage" to property owned by Higby.  This exclusion, according to

Plaintiffs, "prevent[s] the CGL policy from serving as a property insurance policy."[94]  Because

the exclusions would apply to Higby if Higby sought coverage under the CGL policy, Plaintiffs

contend the exclusions apply also to DCP.  The CGL Policy expressly defines the terms "you"

and "your" to "refer to the Named Insured shown in the Declarations, and any other person

qualifying as a Named Insured under this policy."[95]  Because the only "Named Insured"

---

[90]*See* Doc. 73, Ex. A at 0007 ("[C]overage [for the Additional Insured] shall not be broader than coverage afforded the Named Insured.").

[91]*Id.* at 0012.

[92]*Massingill v. State Farm Mut. Auto Ins. Co.*, 176 P.3d 816, 824 (Colo. Ct. App. 2007); 7 Couch on Insurance § 101:60.

[93]*Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins.*, 207 P.3d 839, 842 (Colo. Ct. App. 2008) (citing *State Farm Mut. Auto Ins. Co. v. Mendiola*, 865 P.2d 909, 912 (Colo. Ct. App. 1993)).

[94]*Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007).

[95]Doc. 73, Ex. A at 0009.

identified in the Declarations is Higby, Plaintiffs contend that the terms "you" and "your" clearly and unequivocally refer solely to Higby.

DCP counters that the terms "you" and "your" are ambiguous.  The CGL Policy states in the endorsement that the "entities identified on Certificates of Insurance on file with the Company are Additional Insureds under this policy."  The Policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy . . . The word 'insured' means any person or organization qualifying as such under Section II—Who is an Insured."[96]  Section II of the CGL Policy lists various entities and individuals that are "insureds" under the Policy, including related business entities, managers, and volunteer workers.[97]  Section II does not include "Additional Insureds" as insureds.  Thus, DCP argues, it is impossible to ascertain from the Policy how additional insureds are classified under the Policy.

Citing the Tenth Circuit case of *Marathon Ashland Pipe Line LLC v. Maryland Casualty Co.*,[98] DCP argues that "you" in the CGL policy refers not only to Higby as the named insured, but also to DCP as the additional insured.  As in this case, the insurer in *Marathon* contended that the policy's use of "you" made it clear that named insureds and additional insureds are provided different coverage.[99]  The insurer argued that "you" referred only to the named insured,

---

[96]*Id.*

[97]*Id.* at 0017.

[98]243 F.3d 1232 (10th Cir. 2001).

[99]*Id.* at 1240–41.

31

whereas "insured" refers to all other insureds under the policy, including Marathon.[100]   The

insurer relied on the language in the insurance agreement preamble identical to the definition in

the CGL Policy at issue here: "[t]hroughout this policy the words 'you' and 'your' refer to the

Named Insured shown in the Declarations, and any other person or organization qualifying as a

Named Insured under this policy."[101]   According to the insured, all of the provisions, exclusions,

and definitions within the policy that used the term "you" apply only to named insureds.[102]

Noting that the insurer's argument "has not fared well" in other cases,[103] the court rejected the

insurer's argument, explaining:

> At a minimum, the use of "you" in the policy is ambiguous as to
> whether it refers to additional insureds and, as such, must be
> interpreted in their favor.  Under the policy language and in the
> Marathon endorsement, it is not clear that "you" as used in the
> policy excludes additional insureds.  The endorsement adding
> Marathon as an additional insured stated that "WHO IS AN
> INSURED (Section II) is amended to include as an insured the
> person or organization shown in the Schedule."  This amendment,
> by its own language, adds Marathon as an "insured," and does not
> relegate it to a lesser status than named insureds under the policy.
> Moreover, Section II does not define classes of insureds in terms
> of lesser or greater coverage.  Instead, it describes which persons
> related to the insured are included under the policy.  In paragraph 1
> of Section II, for example, the policy reads: "if you are designated
> in the Declaration as an organization . . . *you* are an insured.  *Your*
> 'executive officers' and directors are insureds, but only with
> respect to their duties as *your* officers or directors."  Reading the
> policy as excluding additional insureds everywhere the word "you"

---

[100]*Id.* at 1241.

[101]*Id.*

[102]*Id.*

[103]*Id.* at n.6 (collecting cases).

is employed would make the policy's coverage amorphous, leaving
additional insureds open to all sorts of unanticipated exclusions.
"The purpose of provisions to add insureds is 'to extend the policy
coverage to others . . . not to change the nature of th[e]
coverage.'"[104]

The court further held that "[t]he mere use of the word 'you' in connection with the entire

policy also does not place additional insureds on notice that they are excluded from its

provisions," noting that the insurer could have included a plain statement in the endorsement that

additional insureds were to be treated differently under the policy, or included a statement in the

preamble, Section II, or the endorsement specifying that additional insureds do not qualify as

named insureds.[105]  "Absent such a clear exclusion, the policy is at least ambiguous whether

'you' includes endorsed additional insureds."[106]

Plaintiffs contend that the majority of courts have held that the terms "you" and "your,"

as used in similarly worded policies, refer solely to the named insured and do not encompass

additional insureds under the policy.  Plaintiffs urge that the facts of this case are similar *United*

*Fire & Casualty Co. v. Boulder Plaza Residential, LLC*, where the Tenth Circuit held that "you"

and "your" do not apply to an additional insured where the policy "specifically states that 'you'

and 'your' mean only the Named Insured."[107]  In that case, however, the Additional Insured

---

[104]*Id.* (quoting *Wyner v. N. Am. Specialty Ins. Co.*, 78 F.3d 752, 756 (1st Cir. 1996) (quoting *Sonoco v. Travelers Indem. Co.*, 315 F.2d 126, 128 (10th Cir. 1963)).

[105]*Id.* at 1241–42.

[106]*Id.* at 1242.

[107]633 F.3d 951, 962 (10th Cir. 2011).

Endorsement stated: "**Who Is An Insured** is amended to include as an insured the person or organizations shown in the Schedule, but only with respect to your liability which may be imputed to that person or organization directly arising out of your ongoing operations performed for that person or organization."[108]  Thus, the language in that additional insured endorsement specifically limited the additional insured's coverage, and the court was able to determine that additional insureds fall under "insured" status and not "named insured" status.[109]  Certainly, if that additional endorsement language was used in this case, the Court might be able to ascertain whether additional insureds fall under "insured" or "named insured" status.  That was not the endorsement used in this case, however, and it is impossible to ascertain from the CGL Policy how additional insureds are classified under the Policy.

Plaintiffs further argue that *Marathon* is distinguishable because in that case, the ambiguity was caused by the phrase that the insurer would pay "all sums which *you* shall become legally obligated to pay as damages," while in this case, the CGL Policy states that the insurer will pay "those sums the *insured* becomes legally obligated to pay as damages."  Thus, Plaintiffs argue, the *Marathon* court had no choice but to conclude that "you" and "your" were ambiguous, as the policy would never afford coverage to an additional insured.  The court in *Marathon* does not make this distinction in its analysis finding the policy exclusion language

---

[108]*Id.*

[109]Notably, the Tenth Circuit did not cite or discuss *Marathon* in its decision on appeal.  The district court in *United Fire*, however, specifically noted that the language identifying additional insured parties in *Marathon* differed significantly from the language in that case, which explicitly relegated the additional insureds to a lesser status than named insureds under the policy.  *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-037-PAB-CBS, 2010 WL 420046, at *9 (D. Colo. Feb. 1, 2010).

ambiguous.[110]  Although Plaintiffs attempt to cast the decision as an outlier, *Marathon* illustrates the importance of drafting a policy exclusion in a way that makes clear the relegation of parties as insureds or named insureds.

As in *Marathon*, Section II of the CGL Policy does not define classes of insureds in terms of the extent of coverage.  The additional insureds endorsement does not amend Section II to add DCP as an "insured."  The preamble to the CGL Policy, like that in *Marathon*, states that "'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  Accordingly, the Court finds that, like *Marathon*, "the entire policy, read as a whole, is ambiguous as to whether this language differentiates an additional insured . . . from a named insured."[111]  Thus, the endorsement can reasonably be interpreted as qualifying DCP as a named insured, and therefore including DCP within the scope of "you" and "your" as used in the CGL Policy.  Cases from other jurisdictions have reached a similar conclusion.[112]

Citing the Separation of Insureds provision in the CGL Policy, DCP contends that the policy exclusion's phrase "property you own" refers only to property DCP owns, since DCP is the only insured seeking coverage in this case.  Courts have interpreted separation-of-insureds

---

[110]*Marathon*, 243 F.3d at 1241.

[111]*Id.*

[112]*See Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886, 892 (7th Cir. 1997); *Wyner v. N. Am. Specialty Ins. Co.*, 78 F.3d 752, 755 (1st Cir. 1996); *Triad Mech. Inc. v. Coatings Unltd., Inc.*, No. 07-516-HU, 2007 WL 2713842, at *5–6 (D. Or. Sept. 12, 2007).

clauses to provide each insured, whether named or additional, with separate coverage.[113]  Thus, under a separation of insureds clause, the application of the "property you own" exclusion must be determined separately with regard to each insured.[114]   When determining whether an exclusion should bar recovery for an additional insured, one commentator explains,

> Severability clauses effectively create "multiple policies with identical terms but different insureds." When determining whether an exclusion should bar coverage for an additional insured, the presence of a severability of interests clause in the policy is construed to mean the policy should be read as if each insured were the only insured.  Such a reading tends to expand coverage, which courts rationalize on the grounds that the severability of interest clause is an insurer's implied recognition of a separate obligation to others.[115]

Thus, DCP argues, the policy exclusion for damage to "property you own" would not apply to DCP because DCP does not own the crane.

Plaintiffs counter that when read as a whole, the "property you own" exclusion bars coverage to damage to property owned by Higby irrespective of whether the party seeking coverage is Higby or DCP.  Plaintiffs point to the plain language of the Additional Insured endorsement, which expressly provides that the coverage provided an additional insured "shall not be broader than coverage available to the Named Insured," and urge that DCP's

---

[113]*Patrick Eng., Inc. v. Old Rep. Gen. Ins. Co.*, 973 N.E.2d 1036, 1042 (Ill. Ct. App. 2012) (citation omitted).

[114]*Id.*

[115]Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insurance Contracts and Additional Insureds*, 44 Drake L. Rev. 781, 808 (1996).

interpretation would afford greater coverage to DCP than it would to Higby for the damage at issue, as there would be no limitation on the scope of coverage afforded to DCP.  As Colorado courts have noted, a typical CGL policy protects businesses from third party claims for personal injury or property damage resulting from accidents, and often contain an exclusion for damage to property owned by the insured in order to prevent the CGL policy from serving as a property insurance policy.[116]  Plaintiffs urge that the very purpose of a "property you own" exclusion is to ensure that this type of risk is covered by a separate and distinct line of coverage—in this case, the CIM Policy.  Thus, Plaintiffs argue, DCP's interpretation would lead to an unreasonable result, as it effectively converts Higby's CGL policy into DCP's own property insurance policy, which is clearly coverage broader than the coverage afforded Higby.

The Court disagrees.  The purpose of the exclusion is to deny coverage under a liability policy for damage to the insured's own property.  Because DCP is an additional insured, the issue is whether the exclusion bars recovery for damage to its property or to Higby's property.  Certainly, granting coverage to an additional insured's own property would turn the CGL Policy into a form of first-party insurance, and would clearly be a change or extension of the Policy's coverage.  But construing the exclusion so that the additional insured's coverage is limited to damage caused to another person's property, including the named insured's property, is consistent with the purpose of the exclusion—to "prevent the CGL policy from serving as a

---

[116]*Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007) (citing *Cedar Lane Inv. v. St. Paul Fire & Marine Ins Co.*, 883 P.2d 600, 603 (Colo. App. 1994)).

property insurance policy."[117]  As the *Marathon* court reasoned, the purpose of an additional insured provision is to extend the policy coverage to others, not to change the nature of the coverage.[118]

Accordingly, the Court agrees with DCP that because it is the insured seeking recovery, the CGL Policy applies as if DCP were the only insured seeking recovery.  Thus, the exclusion means that the Policy does not apply to property DCP owns.  Because DCP does not own the crane, it follows that this exclusion does not apply.

### b.      Property In the Care, Custody, or Control of the Insured

This does not end the Court's inquiry, however, as Plaintiffs also argue that exclusion j(4) also applies to bar recovery for damage to the crane.  That policy exclusion bars recovery for damage to "personal property in the care, custody or control of the insured."   DCP argues that the exclusion does not apply to DCP because the crane was simply parked at the plant as part of Higby's operations, and DCP had no authority to do anything with the crane.  DCP cites Couch on Insurance, which states that "the great majority of cases support the view that property in the care, custody, or control of the insured refers to *possessory handling* of the property."[119]

---

[117]*Id.* at 802.

[118]243 F.3d at 1241; *see Wymer v. N. Am. Specialty Ins. Co.*, 78 F.3d 752, 756 (1st Cir. 1996) (construing the word "you" in the exclusion for "property you own" to mean the property of the party seeking coverage, whether that party was a named insured or an additional insured because purpose of additional insured provision is to extend coverage to others, "not to change the nature of the coverage nor to change the declarations nor to remove the exclusions"); *SFH, Inc. v. Millard Refrigerated Servs., Inc.*, 339 F.3d 738, 744 (8th Cir. 2003) (same).

[119]Doc. 75 at 14 (citing Couch on Insurance § 126:22 (3d ed. 2007)).

Plaintiffs respond that as contemplated at oral argument, additional discovery is needed to evaluate the applicability of this exclusion to bar coverage. The Court agrees, as there is nothing in the record before the Court that would permit it to rule on this claim as a matter of law.

### E.     Waiver

DCP contends that the CGL Policy contains a waiver provision that states National waives any right of recovery against DCP "because of payments we make for injury or damage arising out of your ongoing business operations." The Schedule reflects that the waiver applies "where required by written construction contract" and thus, DCP argues, Higby should have precluded this suit based on the requirement in the MSA in conjunction with the waiver in the CGL Policy, as the injury in question did indeed arise out of Higby's ongoing operations. Plaintiffs respond that National paid Higby's claim under the CIM Policy, not the CGL Policy, and thus the waiver should not apply to rights of recovery and subrogation made under the CIM Policy, which was not listed in nor required by the MSA. DCP does not address Plaintiff's arguments or reassert its claim in its reply; in its response to Plaintiffs' motion, DCP reasserts its claim that Plaintiffs breached the MSA by not obtaining the requisite insurance, but does not assert its waiver claim. Thus it appears that DCP has dropped this issue. Alternatively, the Court finds that DCP's argument is not sufficiently developed to warrant consideration, and is

thus summary judgment on this claim is denied.[120]

### F.      Breach of the MSA

DCP contends that Higby and National failed to take all steps to make DCP fully an additional insured under the CGL Policy, and thus Higby is in breach of the MSA, rendering National with no claim against DCP to which National could become subrogated.  While it appears that this argument is moot in light of Plaintiffs' admission that DCP is and additional insured under the CGL Policy and the Court's analysis on whether National's claim is barred by the anti-subrogation rule, that determination hinges upon whether DCP's claim falls under the "property in the possession, control, or care of the insured" exclusion. Likewise, Defendants' claim for attorney fees is also contingent on the success of their claims.  Accordingly, the Court denies summary judgment on these issues, without prejudice to reassert them along with submissions on the applicability of the policy exclusion.

### G.      Willful Misconduct

Finally, in their response to Defendants' motion, Plaintiffs contend that Defendants cannot rely on the MSA based on any willful misconduct.  Plaintiffs assert that if DCP succeeds on its claim that the CGL Policy covers its own negligence, then Higby should be permitted to proceed with discovery on the issue of whether the fire was caused by DCP's willful misconduct. Defendants respond by asking the Court to dismiss this theory for failure to state a claim.

---

[120]*See Leighton v. The City and Cnty. of Denver*, 14-cv-2812-PAB-NYW, 2015 WL 5532751, at *6 n.5 (D. Colo. Sept. 21, 2015) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)) ("Arguments raised in a perfunctory manner . . . are waived").

Defendants' request is premature.  As the parties are well aware, discovery in this case has been limited, as the parties have proceeded solely on the MSA and insurance policies.  As a result, Plaintiffs maintain that attempted discovery on this issue has been precluded.  No Pretrial Order has been entered and there is no allegation or claim for willful misconduct in Plaintiffs' Complaint.  Accordingly, there is no claim or willfulness defense upon which the Court can rule at this time.  As discussed above, discovery is needed on the remaining exclusion; the Court will permit additional discovery on this issue as well, subject to any objections made in the context of specific discovery.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 72) is GRANTED in part on the issue of whether the CGL Policy extends coverage to DCP for its negligence, DENIED with respect to the issue of waiver, and DENIED without prejudice with respect to the issues of breach of contract and attorney's fees.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 84) is DENIED with respect to its claim that the policy provision at issue is void as well as whether DCP's claim is barred under the "property you own" exclusion; the Court will permit further discovery on the "property in the possession, care, or control of the insured" exclusion and willful misconduct claim or defense.

**IT IS SO ORDERED.**

Dated: <u>September 28, 2015</u>

 S/ Julie A. Robinson<br>JULIE A. ROBINSON<br>UNITED STATES DISTRICT JUDGE