IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HIGBY CRANE SERVICE, LLC, and )
NATIONAL INTERSTATE )
INSURANCE CO., )
 )
        **Plaintiffs,** )
 )
vs. )
 )   Case No. 10-1334-JAR
 )
NATIONAL HELIUM, LLC., )
a Delaware company; and )
DCP MIDSTREAM, LP, a Delaware )
limited partnership, )
 )
        **Defendants.** )
_____)

**MEMORANDUM AND ORDER**

This litigation arose as a result of a fire in the National Helium Plant near Liberal, Kansas in August 2008, causing damage to one of Plaintiff Higby Crane, LLC's ("Higby") cranes. Plaintiff National Insurance Company ("National") is an insurance company licensed to issue general liability insurance policies in Kansas. National brought this action against Defendants National Helium, LLC. ("National Helium"), which owned the plant, and Duke Energy Field Service, LP, renamed DCP Midstream, LP ("DCP"), which operated the facility, claiming a right of subrogation through its insured, Higby. On remand from the Tenth Circuit Court of Appeals, this Court granted Defendants summary judgment in part on the issue of whether DCP is covered for its own negligence under the applicable policy, denied the claim that National waived its subrogation rights, and denied without prejudice the claim for breach of contract and attorney's fees.[1] The Court also denied Plantiffs' cross-motion for summary judgment with respect to their

---
[1] Doc. 94.

claim that the policy provision at issue is void as well as its claim that DCP's coverage is barred under the "property you own" exclusion, and permitted further discovery on the "property in the possession, care, or control of the insured" exclusion and willful misconduct claim or defense.[2] Plaintiffs have abandoned their remaining claims and defenses in this action and this matter is presently before the Court on the parties' cross-motions for partial summary judgment on Defendants' request for attorney's fees and for entry of final judgment (Docs. 100, 102). The matter is fully briefed and the Court is prepared to rule.[3] For the reasons explained in detail below, the Court grants Plaintiffs summary judgment and denies Defendants summary judgment on DCP's claim for attorney's fees; final judgment will be entered consistent with the Court's September 28, 2015 Memorandum and Order.

**I.   Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[4] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[5] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[6] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[7] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the

---

[2]*Id.*

[3]Defendants did not file a reply in support of their cross-motion for summary judgment.

[4]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[5]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[6]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[7]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

non-moving party.'"[8] "Where, as here, the parties file cross-motions for summary judgment, [the Court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[9]

## II. Uncontroverted Facts

On September 28, 2015, this Court issued its Memorandum and Order on the parties' cross-motions for summary judgment, resolving the majority of claims at issue and leaving three issues unresolved. First, the Court found that material issues of fact remain on the question of whether the Care, Custody or Control Exclusion bars coverage as to DCP for the subrogation claim at issue.[10] Second, the Court denied summary judgment without prejudice to DCP on its claim for attorney's fees under the Master Service Agreement ("MSA"), explaining as follows:

> DCP contends that Higby and National failed to take all steps to make DCP fully an additional insured under the CGL Policy, and thus Higby is in breach of the MSA, rendering National with no claim against DCP to which National could become subrogated. While it appears that this argument is moot in light of Plaintiffs' admission that DCP is and [sic] additional insured under the CGL Policy and the Court's analysis on whether National's claim is barred by the anti-subrogation rule, that determination hinges upon whether DCP's claim falls under the "property in the possession, control or care of the insured" exclusion. Likewise, Defendants' claim for attorney fees is also contingent on the success of their claims. Accordingly, the Court denies summary judgment on these issues, without prejudice to reassert them along with submissions on the applicability of the policy exclusion.[11]

---

[8] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9] *James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[10] Doc. 94 at 38–39.

[11] *Id.* at 40.

Finally, the Court found that material issues of fact precluded resolution of the willful misconduct issue.[12]

Plaintiffs have now abandoned any claims or defenses to this matter based upon the Care, Custody or Control exclusion and DCP's alleged willful misconduct. Accordingly, the sole remaining issue concerns DCP's claim for attorney's fees. The MSA states that Higby was to procure insurance policies that were written or endorsed such that the insurer was to assign and relinquish to DCP "(i) any right of recovery which the insurer may have or acquire against [DCP]." Section 22(d) of the MSA states that if "either party commits a material breach"of the MSA, the aggrieved party "shall be entitled to recover all costs, including court costs and attorney's fees, incurred in any proceeding wherein the aggrieved party seeks redress for such breach."

Defendants asserted in both motions for summary judgment that Higby breached the MSA by failing to procure insurance that waived subrogation.[13] Defendants' counterclaim asserted breach of contract by Higby "by being a party to this lawsuit, by failing to acquire the appropriate policies of insurance, and by permitting or failing to preclude the suit by National Interstate Insurance Company against Defendants in connection with the incident of August 19 to August 20, 2008."

### III. Discussion

The parties agree that Colorado law applies to the MSA.[14] As a general rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not

---

[12] *Id.* at 40–41.

[13] The Court ruled that Defendants waived this argument in its summary judgment Order on remand. Doc. 94 at 39.

[14] Doc. 74-1 at 7.

4

recoverable by the prevailing party in either a contract or tort action.[15] If attorney's fees are sought based on a contractual agreement to award fees to the prevailing party, they should be treated as costs, at least where the fee-shifting contractual provision is not the subject of dispute between the parties and the contract itself is proved to exist.[16] By contrast, if attorney fees are part of the substance of a lawsuit and are sought as a legitimate consequence of the tort or breach of contract sued upon, they are damages.[17] Here, the MSA states that an aggrieved party is entitled to recover attorney's fees for seeking redress for a material breach of the MSA.

Whether a breach is material is a question of fact.[18] A material term goes to the root of the matter or essence of the contract.[19] Materiality must be assessed in the context of the expectations of the parties at the time the contract was formed.[20] In assessing whether a breach of contract is material, the trier of fact should consider the importance or seriousness of the breach and the likelihood that the injured party will nonetheless receive substantial performance.[21]

As the Court previously ruled, Higby procured the required commercial general liability insurance and DCP was added as an additional insured to such coverage on the CGL Policy; Plaintiffs have abandoned their claim and defense that coverage is excluded under the Care, Custody and Control exclusion and by willful misconduct on the part of DCP. Nevertheless,

---

[15]*Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo. 1996) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

[16]*Lawry v. Palm*, 192 P.3d 550, 568 (Colo. Ct. App. 2008) (citation omitted).

[17]*Id.* (citations omitted).

[18]*Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (citing *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 640 (Colo. Ct. App. 1999)).

[19]*Id.* (citing *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229 (Colo. Ct. App. 2000)).

[20]*Id.*

[21]*Id.* (citing *Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981)).

DCP claims that it is entitled to recover attorney's fees in this action because Higby materially breached the MSA.

First, DCP argues that even though Higby obtained a CGL Policy that provides coverage for DCP's negligence, Higby materially breached the MSA because the CGL Policy does not afford "primary" liability coverage to DCP.  DCP contends that the "other insurance" clauses in the CGL and CIM Policies render the CGL Policy excess to the CIM Policy.  Specifically, Paragraph 4(b)(2) of the CGL Policy states that the Policy is excess over any "other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."[22]  DCP argues that it is the additional insured seeking primary coverage under the CGL Policy and thus, that Policy should have provided the primary coverage in this instance. DCP contends that Higby caused the CGL Policy to potentially not be primary coverage by obtaining the CIM Policy, which states in relevant part:

> Other Insurance:  This Policy does not cover any "loss" or damage which at the time of "loss" or damage is insured by, or would, but for the existence of this Policy be insured by any other insurance Policy or policies either primary or excess.
>
> This clause, however, shall not apply to other insurance, when the named insured is required to provide primary and non-contributory insurance, by written agreement, executed by all parties prior to the "loss."[23]

This clause, DCP claims, caused the CGL Policy to  not be primary insurance and breached the MSA.

As Plaintiffs point out, however, the "other insurance" clauses are irrelevant to this dispute.  The purpose of an "other insurance" clause is to determine priority of coverage when

---

[22]Doc. 74-5 at 19, ¶ 4.

[23]Doc. 40-3 at  ¶ 24.

more than one policy affords coverage to an insured's liability.[24]  As this Court has determined, the CGL Policy is the only liability policy that affords coverage to DCP for its negligence.  As Plaintiffs point out, where there is but one policy at issue, there cannot be a dispute regarding priority of coverage, and thus the "other insurance" provisions set forth in the potentially applicable policy are irrelevant to the coverage issues before the Court.  Further, Paragraph 4(b)(2) renders the CGL Policy secondary or excess only to the extent that Higby, as the named insured under the Policy, has been added as an additional insured under a subcontractor's policy.[25]  It is inapplicable where, as here, a party has been added as an additional insured *to* the policy issued to Higby.  Further, even if the CGL Policy applied on an excess coverage basis, this Court has determined that the anti-subrogation rule prohibits any recovery from DCP in this action.

Moreover, an insurer may not rely on an "other insurance" clause to limit its liability unless there is "an identity of the insured interest and an identity of risk" covered by the two policies at issue.[26]  In this case, there is no identity of interest or risk between the CIM and CGL Policies because they provide coverage for separate and distinct risks: the CGL Policy affords liability coverage for claims arising from Higby's operations, while the CIM Policy affords first-party coverage for damage to Higby's property.  The CIM Policy does not afford liability coverage to Higby or any other party, and DCP is not an insured under the CIM Policy and cannot look to the CIM Policy to provide coverage for its alleged liability to Higby for damage

---

[24]*See Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997) (explaining "[n]ormally, an excess clause attempts to shift the priority of payments as between coverages when two or more policies apply to the liability"); *W. Cas. & Sur. Co. v. Universal Underwriters Ins. Co.*, 657 P.2d 576, 578 (Kan. 1983) ("'Other insurance' [clauses] . . . seek only to establish priority as to which policy should be exhausted first in satisfying the  liability.").

[25]Doc. 74-5 at 19.

[26]*See* 15 Couch on Insurance 3d § 219:14.

to Higby's crane. Similarly, Higby cannot look to the CGL Policy to afford coverage for damage to the crane because the CGL Policy excludes coverage for damage to Higby's property.[27] Finally, nothing in the plain language of the MSA prohibits Higby from procuring commercial inland marine insurance. DCP has not established that Higby materially breached the MSA on this ground.

Next, DCP reasserts its claim that Higby materially breached the waiver of subrogation provision in the MSA, which states in pertinent part:

> 9. INSURANCE
>
> 9.1 Required Coverages. Throughout the term of this Agreement [Higby] shall carry and pay for . . . Commercial General Liability Insurance covering liabilities for death and personal injury and liabilities for loss of or damage to property with combined single limit of not less than $3,000,000 per occurrence. This insurance must cover all operations of [Higby] required to fulfill this agreement.
>
> . . .
>
> 9.3 Waiver of Subrogation. The insurance policies described above shall, in addition be so written or endorsed to provide that the insurer shall assign and relinquish unto [DCP] (i) any right of recovery which the insurer may have or acquire against [DCP], its affiliates or coventurers, or their directors, officers, or employees for payments made or to be made under such policies, and (ii) any lien or right of subrogation which the insurer may have or acquire for payments made or to be made to any person who asserts a claim against [DCP], its affiliates or coventurers or their directors, officers, or employees.[28]

Thus, under the MSA, Higby was contractually obligated to waive subrogation under those insurance policies required by the MSA. The insurance policies "described above" in the MSA are worker's compensation, employer's liability, commercial general liability and business automobile liability.

---

[27]See Doc. 94 at 30–38.

[28]Doc. 74-1 at 4–5.

>The CGL Policy has a waiver of subrogation endorsement that states:
>
>We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard."[29]

The Court ruled on the coverage issue in its previous order, subject to the issue of whether DCP's claim is barred under the "property in the possession, care, or control of the insured" exclusion, which has now been waived. Nevertheless, DCP contends that the waiver of subrogation exemption in the CGL Policy only applies to completed operations, and thus does not fulfill the requirements of the MSA. The endorsement is clearly stated in the disjunctive, however, and applies to both ongoing operations claims and completed operations claims. The damage to the crane in this case arises from an "ongoing operation," and therefore satisfies the requirements of the MSA.[30]

DCP further contends that Higby breached the MSA by failing to preclude this subrogation lawsuit by National. The plain language of the MSA did not obligate Higby to procure commercial inland marine insurance, however, and therefore did not require Higby to waive subrogation for any payments made under the CIM Policy. As such, Higby owed no contractual obligation to DCP under the MSA to prevent National, Higby's first-party property insurer, from filing this subrogation action seeking the recovery of payments made to Higby for a loss caused by DCP's negligence that was paid under the CIM Policy.

Accordingly, DCP has not met its burden to establish that Higby materially breached the MSA, and is thus not entitled to an award of attorney's fees under that agreement. Final

---

[29]Doc. 74-5 at 48.

[30]*See* Doc. 94 at 23–24.

judgment will be entered in favor of Defendants consistent with the Court's ruling set forth in its previous Order.

**IT IS THEREFORE ORDERED BY THE COURT** that Plantiff's Motion for Partial Summary Judgment Denying Defendants' Request for Attorney's Fees (Doc. 100) is GRANTED; Defendants' Cross-Motion for Partial Summary Judgment Granting Request for Attorney's Fees (Doc. 102) is DENIED.  Final judgment shall be entered in favor of Defendants consistent with the Court's September 28, 2015 Memorandum and Order.

**IT IS SO ORDERED.**

Dated: July 29, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE